IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

PAULA M. BURDICK et al.,

       Plaintiffs,

v.                                      Case No. 22-CV-210-JFH

JUSTIN KERNS,

       Defendant.

## OPINION AND ORDER

This matter is before the Court on the Motion to Dismiss ("Motion") filed by Defendant Justin Kerns ("Defendant") under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 6. Plaintiffs Paula M. Burdick and Tim Underwood, natural parents of Nicole Lynn Underwood, deceased, and grandparents and next friends of T.R.L., a minor child, deceased, and T.W.L., Jr., a minor child, (together, "Plaintiffs"), filed a response in opposition. Dkt. No. 11. For the reasons set forth below, Defendant's Motion [Dkt. No. 6] is GRANTED.

## STANDARD

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 562. For the

purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant. *Twombly*, 550 U.S. at 555; *Alvarado v. KOB-TV, L.L.C.,* 493 F.3d 1210, 1215 (10th Cir. 2007); *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. *Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs*, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

## FACTUAL BACKGROUND

Taking Plaintiffs' allegations as true and construing them in the light most favorable to Plaintiffs, as it must at this stage, the Court briefly recounts the allegations. On May 11, 2020, Troy Wesley Lane ("Lane") was suspected of stealing a pack of beer from the QuikTrip located at 7520 East 61st Street, Tulsa, Oklahoma. Dkt. No. 2 at ¶ 7. Lane left the QuikTrip in his vehicle with Nicole Underwood and T.R.L. riding as passengers in the backseat. *Id*. at ¶¶ 8-9. Shortly thereafter, Lane's vehicle was pursued by the Tulsa Police Department ("TPD") based upon the suspected theft. *Id*. at ¶ 8. Defendant, a TPD officer, was among the pursuit. *Id*. at ¶ 10. Defendant attempted to stop Lane in the LaFortune Plaza neighborhood between East 61st Street and East 51st Street by activating his patrol car lights. Dkt. No. 2 at ¶ 10. Lane failed to stop and continued on, driving "recklessly" through the "residential area" toward East 51st Street. *Id*. at ¶¶ 11, 13. Defendant continued his pursuit of Lane with his patrol car lights activated. *Id*. at ¶ 14.

As Lane approached East 51st Street, he accelerated, running through a stop sign and turning onto East 51st Street, a "major thoroughfare in the City of Tulsa," at a high rate of speed. *Id*. at ¶¶ 13, 15. As he turned onto East 51st Street, Lane narrowly avoided "multiple collisions."

Dkt. No. 2 at ¶ 13. Lane continued on East 51st Street at high rate of speed, running through multiple stoplights. *Id*. at ¶ 13, 17. Defendant continued his pursuit of Lane onto East 51st Street. *Id*. at ¶ 12. Finally, as Lane approached the on-ramp to Highway I-44 off of East 51st Street, Lane ran a red light for westbound traffic and collided with two other vehicles. *Id*. at ¶¶ 19-20. Nicole Underwood and T.R.L. were killed in the accident. Dkt. No. 2 at ¶ 22. Defendant arrived on the scene immediately thereafter. *Id*. at ¶ 21.

## AUTHORITY AND ANALYSIS

In asserting a 42 U.S.C. § 1983 claim, it is incumbent on the plaintiff to identify some violation of a constitutional right. *See Browder v. City of Albuquerque*, 787 F.3d 1076, 1078 (10th Cir. 2015). In this case, Plaintiffs point to the Fourteenth Amendment's due process clause, which prohibits the government from depriving individuals of their lives, liberty, or property without due process of law. *Id*. Substantive due process, which is the basis of Plaintiffs' Complaint here, guarantees certain deprivations will not take place without a sufficient justification. *Id*. A substantive due process violation can occur via legislative act that infringes on a fundamental right or "official conduct that deprives a person of life, liberty, or property in a manner so arbitrary as to shock the judicial conscience." *Lindsey v. Hyler*, 918 F.3d 1109, 1115 (10th Cir. 2019). Depending on the circumstance, conduct "shocks the judicial conscience" when the official was deliberately indifferent to a person's right to life or safety—known as the deliberate indifference standard—or possessed "an intent to physically harm the suspect or worsen his legal plight"— known as the intent to harm standard. *Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099, 1102 (10th Cir. 2009).

The Supreme Court has addressed a § 1983 claim within the context of a high-speed police chase. *City of Sacramento v. Lewis,* 523 U.S. 833 (1998). The *Lewis* Court explained that:

> A police officer deciding whether to give chase must balance on one hand the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other, the high-speed threat to all those within stopping range, be they suspects, their passengers, other drivers, or bystanders.

*Id*. at 853. The *Lewis* Court ultimately adopted the intent to harm standard, holding that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983." *Id*. at 854; *see also Ellis*, 589 F.3d at 1102 ("When an officer is in a high-pressure situation where time is of the essence, there must be evidence of a purpose to cause harm unrelated to the legitimate object of the arrest to satisfy the element of arbitrary conduct shocking to the conscience for a due process violation."). The *Lewis* Court noted that the deliberate indifference standard would apply, however, "only when actual deliberation is practical" and "rests upon the luxury . . . of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations." *Id*. at 851, 854; *see also Green v. Post*, 574 F.3d 1294, 1303 (10th Cir. 2009).

In Plaintiffs' view, Defendant "had time to deliberate whether it was worth it to chase a minor misdemeanant driving recklessly through a residential neighborhood." Dkt. No. 11 at 6. Plaintiffs argue that "[a]ny reasonable police officer knew or should have known that a high-speed chase in pursuit of a suspect accused of a minor misdemeanor, which was not an emergency, endangered the safety of passengers in the suspect's car" and, therefore, Defendant, by choosing to continue his pursuit, "consciously disregarded the safety of the passengers in the suspect's care and was deliberately indifferent to the harm that could result . . . ." *Id*. at ¶¶ 24-25. Specifically, Plaintiffs argue that between Defendant's attempted stop of Lane in the LaFortune Plaza neighborhood and Defendant's high-speed pursuit of Lane on East 51st Street, actual deliberation

about whether or not to pursue lane was practical, making deliberate indifference the applicable standard. This Court disagrees.

This case involves a high-speed chase as contemplated by *Lewis*. 523 U.S. 833. While several minutes may have passed between Defendant's attempted stop of Lane in the LaFortune Plaza neighborhood and the high-speed chase on East 51st Street, the Complaint reveals that Defendant's pursuit of Lane did not escalate until Lane turned onto East 51st Street and began driving at a "high rate of speed." Dkt. No. 2 at ¶ 13. At that point, a high-speed chase ensued. *Id*. at ¶ 14. The relevant moments of contemplation are from the time Lane ran through the stop sign, turned onto East 51st Street, and drastically increased his speed to when Defendant decided to turn onto East 51st Street to continue his pursuit. Lane's sudden and speedy flight from Defendant onto East 51st Street constitutes an "evolving, fluid, and dangerous situation[ ] which preclude[s] the luxury of calm and reflective deliberation." *Green*, 574 F.3d at 1306 (internal citation omitted). "[Lane's] outrageous behavior was practically instantaneous, and so was [Defendant's] instinctive response." *Lewis*, 523 U.S. at 855. Accordingly, the Court will assess Defendant's conduct under the "intent to harm" standard.

Under the intent to harm standard, unless Defendant intended to harm Lane physically or to worsen his legal plight by engaging in the high-speed pursuit, Defendant's conduct did not violate the Decedents' constitutional rights. *Id*. at 854. The Complaint does not allege any such intent, nor any facts from which such an intent could be inferred. Therefore, Plaintiffs' Complaint does not sufficiently allege a constitutional violation and fails to state a claim upon which relief can be granted.

However, even if the deliberate indifference standard is applied, the Complaint stills fails to state a claim. Under the deliberate indifference standard, not only must "actual deliberation [be]

5

practical," but the officer's conduct must show "deliberate indifference to an extremely great risk of serious injury to someone in [Decedents'] position." *Green*, 574 F.3d at 1303 (internal quotation omitted). "Extreme" means "egregious or outrageous to the extent that it shocks the judicial conscience." *Id*. There is no bright-line rule for "shocks the conscience" within the context of police conduct and, therefore, a court must examine the particular circumstances of the case before deciding whether its conscience is shocked. *Id*. at 1304. Upon review of the Complaint and in consideration of the particular circumstances of this case, the Court finds that Defendant's actions do not shock the conscious of this Court.

Plaintiffs argue that their Complaint contains "clear evidence of behavior on the part of [Defendant] which is 'egregious or outrageous to the extent that it shocks the judicial conscience.'" Dkt. No. 11 at 7. Specifically, Plaintiffs focus on the fact that Lane was "suspected of no more than shoplifting beer from a convenience store." *Id*. at 6. While this may have been what initially triggered Defendant's pursuit of Lane, once Lane evaded Defendant's attempted traffic stop and began to drive "recklessly" in a residential area, Lane became a danger to members of the public, including the Decedents. This risk significantly increased once Lane fled at a "high rate of speed" down a "major thoroughfare in the City of Tulsa." Dkt. No. 2 at ¶¶ 13, 15. Defendant's decision to pursue Lane and quickly end the threat to others was not "deliberately indifferent" to the rights of other members of the public. Rather, it was a decision reasonably calculated to protect the wellbeing of other members of the public. Had Defendant chosen to let Lane go, there is no guarantee that the same outcome would not have resulted. This conundrum is why Defendant's decision to pursue Lane's fleeing vehicle under the circumstances presented here is not actionable under the deliberate indifference standard.

Without doubt, the deaths of Nicole Lynn Underwood and T.R.L. were tragic and unjustified. But Defendant's conduct, as alleged in the Complaint, does not rise to the level of culpability required to violate the Decedents' Fourteenth Amendment rights. Therefore, the Complaint fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) and must be dismissed.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant Justin Kerns Motion to Dismiss [Dkt. No. 6] is GRANTED and Plaintiffs' Complaint [Dkt. No. 2] is hereby DIMISSED without prejudice.

DATED this 18th day of April 2023.

                                                                    _____
                                                                    JOHN F. HEIL, III
                                                                    UNITED STATES DISTRICT JUDGE